UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEREMY RAY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00116-JPH-MG |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| T.J. WATSON United States penitentiary Terre | ) | |
| Haute Administration Staff; Complex Warden, | ) | |
| MICHAEL UNDERWOOD United States | ) | |
| Penitentiary Terre Haute Administration Staff; | ) | |
| A.W. of Custody, | ) | |
| J.W. COX United States Penitentiary Terre Haute | ) | |
| Administration; A.W. of Operations, | ) | |
| ROB SCHALBURG United States Penitentiary | ) | |
| Terre Haute Administration; Head of the Legal | ) | |
| Dept., | ) | |
| ISHMAEL OLIVER United States Penitentiary | ) | |
| Terre Haute Administration; Food Service | ) | |
| Administrator, | ) | |
| AMANDA ADAMS United States Penitentiary | ) | |
| Terre Haute Administration; Head of the | ) | |
| Recreation Dept., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion to Dismiss and Motion for Summary Judgment**

Jeremy Jackson, an inmate confined at the United States Penitentiary in Terre Haute, Indiana ("USP – Terre Haute"), alleges that employees of certain staff at USP violated his constitutional rights pursuant to the Religious Freedom Restoration Act ("RFRA") and the theory recognized in *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971). The defendants have filed a combined motion to dismiss Mr. Jackson's First Amendment claims and motion for

summary judgment for failure to exhaust his RFRA claims.[1] For the following reasons, that motion is **granted**. Dkt. [25].

## I. Motion to Dismiss for Failure to State a Claim

The defendants argue that Mr. Jackson's First Amendment claims against defendant Amy Adams is foreclosed by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

### B. Claims in Complaint

Mr. Jackson is incarcerated at USP – Terre Haute and practices Islam. He filed a complaint against several individuals currently or formerly employed by the Federal Bureau of Prisons ("BOP") alleging that they burdened his ability to practice his religion. The Court screened his complaint, allowing two claims to proceed: (1) a claim under RFRA against defendants Warden T.J. Watson; Michael Underwood; J.W. Cox; BOP Supervisory Attorney K. Robert Schalburg; Food Service Administrator Ishmael Oliver; and the BOP; and (2) a First Amendment claim against the former Head of the Recreation Department Amy Adams. Dkt. 14.

---

[1] The defendants originally moved to dismiss Mr. Jackson's RFRA claims in part for failure to state a claim on the basis that damages were unavailable under RFRA. On December 10, 2020, the Supreme Court held that RFRA's express remedies provision permits litigants to pursue money damages against federal officials in their individual capacities. *Tanzin v. Tanvir*, 141 S. Ct. 486, 493 (2020). The defendants have withdrawn that portion of their argument. Dkt. 31.

With respect to his First Amendment claim, Mr. Jackson alleged that Ms. Adams violated his First Amendment rights during Ramadan in May 2018 by confiscating his refreshments, calling him religious slurs, and locking him in his cell because he advised her that he could not be present in the recreation yard while inmates listened to music as that would violate his fast. Dkt. 1 at 4.

With respect to his RFRA claims, Mr. Jackson alleged that the defendants tried to "starve" Muslim inmates off the diet by consistently serving halal meals with too few calories, served items that did not carry the halal stamp, and allowed non-Muslims to prepare and handle the food. Dkt. 1 at 3–4. He alleges he sent numerous emails to the defendants alerting them to the Halal diet issues, but they allowed the problems "to go on for extended amounts of time." *Id.* at 3.

## C. Discussion

While federal statute provides that district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" 28 U.S.C. § 1331, jurisdiction does not necessarily create the authority to award damages. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Although Congress has authorized district courts to award damages against state officials who violate the Constitution while acting under color of state law, *see* 42 U.S.C. § 1983, Congress has not provided an analogous authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *See Ziglar*, 137 S. at 1854.

The Supreme Court held in *Bivens* that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. After *Bivens*, the Supreme Court extended this implied authority to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979), and actions alleging deliberate indifference to a

federal prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980).

In *Abbasi*, the Supreme Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." 137 S. Ct. 1843 at 1855. And in the forty years since *Carlson*, the Court has declined to create any new contexts for *Bivens* claims. *Id.* at 1857 (listing cases); *see also Hernandez v. Mesa,* 140 S. Ct. 735 (2020) (no implied damages remedy in action against border patrol agent for cross-border shooting). In each of these cases, the Court reasoned there were "special factors counselling hesitation" about creating a new *Bivens* context and that alternative remedies were available to address the category of injury alleged by the plaintiffs. *Abbasi*, 137 S. Ct. at 1853–54. Expanding *Bivens* to a new context is now a "disfavored judicial activity." *Id.* at 1857.

To determine whether a *Bivens* remedy is available to Mr. Jackson for his First Amendment claims against Ms. Adams, the Court must ask whether the claim presents a new *Bivens* context. *Id.* at 1859. If it does, the Court then inquires whether there are any special factors that counsel hesitation about granting the extension. *Hernandez,* 140 S. Ct. at 743.

Mr. Jackson attempts to bring a First Amendment claim against Ms. Adams under a theory that his right to freely exercise his religion was curtailed or that she retaliated against him for exercising his religious expression. Mr. Jackson's First Amendment free exercise and retaliation claims arise in a new *Bivens* context. The Supreme Court has never recognized a *Bivens* remedy for First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (acknowledging that the Supreme Court has never recognized an implied damages remedy under the First Amendment); *Reichle v. Howards*, 566 U.S. 658, n.4 (2012) ("We have never held that *Bivens* extends to First

4

Amendment claims."). And Mr. Jackson's First Amendment claim "[differs] in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1864. Of the three *Bivens* claims recognized by the Court, the only case arising in the federal prison context, *Carlson,* involved a deliberate indifference for failure to provide medical adequate care claim. The claim presented in *Carlson* is not similar to the claim presented here, that an individual federal employee burdened Mr. Jackson's religious exercise or retaliated against him for trying to observe his religious beliefs. Accordingly, Mr. Jackson's First Amendment claims present a new *Bivens* context.

Because Mr. Jackson's First Amendment claims arise in a new context, the Court must determine whether special factors counsel against inferring a *Bivens* damages remedy. The Supreme Court has not created a definitive list of "special factors counselling hesitation," but "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58. Amongst the considerations is whether there are alternative remedies available to the plaintiff, because that existing remedy "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* In other words, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863 (citations omitted). The Court must also assess the impact of permitting a damages action "on governmental operations systemwide." *Id.* at 1858.

Mr. Jackson has alternative remedies available to him. Mr. Jackson could have pursued a RFRA claim against Ms. Adams, but his complaint specifically pleaded First Amendment claims against her and RFRA claims against the other defendants. Dkt. 1. *See Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017) (noting "[a] plaintiff is the master of his own complaint."). The free

exercise rights provided to prisoners by RFRA are more expansive than the free exercise rights

prisoners are entitled to under the First Amendment. *See Holt v. Hobbs*, 135 S. Ct. 853, 859–60

(2015); *Korte v. Sebelius*, 528 Fed. App'x 583, 588 (7th Cir. 2012) (noting that "RFRA protects

the same religious liberty protected by the First Amendment, and it does so under a more rigorous

standard of judicial scrutiny."). Further, as *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), makes clear,

plaintiffs asserting violations of RFRA may pursue both injunctive and monetary relief. Because

RFRA is an available method of relief, there is no need to infer the availability of damages under

*Bivens*.

Construing Ms. Adams' act of locking Mr. Jackson in his cell as retaliation, the Court turns

to whether *Bivens* extends to a First Amendment retaliation claim. This Court recently examined

this question and concluded that it does not for several reasons. *Fulks v. Watson et al.*,

2:19cv-00501-JPH-MG, dkt. 92 at 10–11. First, the BOP's administrative remedy procedure is an

alternative process that "provides yet another means through which allegedly unconstitutional

actions and policies can be brought to the attention of the BOP and prevented from recurring."

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Mack v. Yost*, 968 F.3d 311, 321

(3d Cir. 2020) (finding that the BOP administrative remedy process and availability of injunctive

relief provided alternative remedy processes counseling against expansion of *Bivens* to First

Amendment retaliation claims). Here, Mr. Jackson filed grievances about Ms. Adams' behavior,

and the warden responded that the matter would be investigated. Dkt. 25-9. This leads to the second

reason for not inferring a *Bivens* remedy—deference to prison administrators in matters of daily

operations. Allowing the prison to investigate staff misbehavior and decide its own course of

discipline or training is advisable since, generally, courts should decline to interfere with "the

problems that arise in the day-to-day operation of a corrections facility." *Bell v. Wolfish*, 441 U.S.

520, 547 (1979); *see also Earle v. Shreves*, --- F. 3d ---, 2021 WL 896399, at *4 (4th Cir. Mar. 10, 2021) (declining to infer *Bivens* remedy for retaliation claims because "[g]iven the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts."); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) (same).

Special factors counsel against extending *Bivens* to Mr. Jackson's First Amendment claims. Accordingly, all claims against Ms. Adams are **dismissed for failure to state a claim**.

### II. Motion for Summary Judgment for Failure to Exhaust Administrative Remedies

The Court now turns to whether Mr. Jackson has exhausted the administrative remedies that were available to him before pursuing RFRA claims in this action.

#### A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

#### B. Facts

Consistent with the summary judgment standard set out above, the following facts are undisputed except where noted. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014).

USP – Terre Haute has an administrative remedy system in place through which inmates

may file grievances related to issues they encounter with the prison or its staff. Dkt. 25-1 at ¶ 4. The administrative remedy process is set forth in 28 C.F.R. §§ 542.10, *et seq.*, and BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates ("P.S. 1330.18").

First, the inmate must attempt to resolve the issue informally with the Institution using a BP-8 form. Dkt. 25-1 at ¶ 6. If the issue is not resolved to the inmate's satisfaction, he may initiate the formal remedy process by filing an Administrative Remedy Request on a BP-9 form within twenty calendar days following the date on which the basis of the complaint occurred. *Id.* The Warden has twenty days (and an additional twenty-day extension if necessary) to respond. *Id.* If the issue is not resolved at the Institution level, the inmate may then appeal the issue to the Regional Level by filing a BP-10 form within twenty days of the Warden's response. *Id.* If the inmate is dissatisfied by the Regional Director's response, he may appeal to the General Counsel using a BP-11 form. *Id.* Once an inmate receives a response to his appeal from General Counsel, after filing administrative remedies at all required levels, his administrative remedies are deemed exhausted. *Id.* At every stage of the process, the inmate is required to use the appropriate form and "place a single complaint or reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2); P.S. 1330.18 at 5.

There is no doubt that Mr. Jackson understands the administrative remedy system, knows how to file grievances, and knows what is required to exhaust the administrative remedies that are available. Mr. Jackson exhausted his First Amendment claims against Ms. Adams and as of September 2020, had submitted a total of sixty-two grievances and appeals. Dkt. 25-1 at ¶ 8.

With respect to his claims about the Halal diet, Mr. Jackson submitted some grievances but never fully exhausted the available administrative remedies with respect to any of those claims. On January 10, 2019, Mr. Jackson initiated Remedy No. 966137 at the Regional Office

complaining that the Halal diet did not have sufficient Halal offerings. *Id.* at ¶ 16. The Regional Office rejected the grievance and returned it to Mr. Jackson because he did not first submit his complaint to the Institution. *Id.* Mr. Jackson appealed the denial to the Central Office, which reached the same conclusion and instructed him to initiate the remedy at the Institution level. *Id.* Mr. Jackson took no further action. *Id.*

On February 25, 2019, Mr. Jackson initiated Remedy No. 969145, again complaining about the Halal menu. *Id.* at ¶ 17. This grievance was rejected because Mr. Jackson had not attempted informal resolution; it was untimely; it lacked specificity; and compensation can only be requested in a tort claim. Dkt. 25-4 at 25. Mr. Jackson took no further action regarding this remedy. Dkt. 25-1 at ¶ 17.

Mr. Jackson acknowledged that he took no further action for Remedy No. 969145, stating he "put in a new remedy that was clear on 3-1-19." Dkt. 32 at 2. That grievance, Remedy 969941, was rejected for being submitted at the incorrect level. Dkt. 25-4 at 25. Mr. Jackson tried to resubmit the grievance at the Regional level, but it was again rejected for being filed at the wrong level. *Id.* at 26–27. Mr. Jackson alleges that he filed a BP-9 in the correct manner, so he attempted to file a BP-11 on March 6, 2019, with an amendment to "point out that the BP-9 was attached." Dkt. 32 at 2. This grievance was rejected on May 31, 2019, with the explanation that "Region is correct this issue must first be addressed at the institutional level. Get help from uinit [sic] team show this response to unit team & get warden respons [sic]". Dkt. 25-4 at 30.

On March 13, 2019, Mr. Jackson initiated Remedy No 970856, stating that his civil rights were violated. *Id.* at ¶ 18. This grievance was denied because Mr. Jackson had not attempted an informal resolution. *Id.* Mr. Jackson took no further action regarding this remedy. *Id.*

Despite being advised on May 6, 2019, to get help from the unit team to pursue his

grievance about his Halal diet, Mr. Jackson did not file any additional grievances related to this claim. Evidence of other grievances that he filed about the mail, a lockdown, and access to the law library, dkt. 25-4 at 31–32, demonstrate that administrative remedies were available to him during this timeframe.

On March 26, 2019, Mr. Jackson filed a tort claim complaining that the BOP failed to provide a Halal diet with sufficient calories and failed to certify that the food provided was Halal. Dkt. 32-1 at 1–2. The tort claim was denied on December 2, 2019. *Id.* at 4.

**C. Discussion**

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Because exhaustion of administrative remedies is an affirmative defense, the burden of proof is on the defendants to demonstrate that Mr. Jackson failed to exhaust all available

administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). The Seventh Circuit takes "a strict compliance approach to exhaustion." *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (internal quotation omitted). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). An administrative procedure is unavailable when (1) the process operates as a "simple dead end," (2) when it is so opaque that it is incapable of use, or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).

The designated evidence shows that Mr. Jackson did not successfully exhaust any of his claims related to his Halal diet. Mr. Jackson alleges that he exhausted Remedy No. 969941. He stated that he submitted the remedy on March 1, 2019, after a previous grievance was rejected for lack of clarity and waited forty days for the warden to respond before submitting a BP-10 on March 18, 2019. Dkt. 32 at 2. The Regional Office rejected the grievance because no BP-9 had been filed. *Id.* (citing dkt. 25-4 at 26 "Entered in error—issue must be addressed at institution level before filing at regional level"). Mr. Jackson then submitted a BP-11 on May 6, 2019, with an amendment "to point out that the BP-9 was attached." Dkt. 32 at 2. That grievance was rejected for being filed at the wrong level, and he was advised to seek assistance from the unit team. Dkt. 25-4 at 30. Mr. Jackson argues he did everything properly and the BOP's response "is a tactic done regularly by USP Terre Haute to hinder filings by inmates." Dkt. 32 at 2.

Mr. Jackson does not contest that his grievances were denied. Instead, he argues that the BOP's mistakes made the process unavailable to him. But Mr. Jackson has not designated evidence showing that the process was unavailable. First, he did not designate evidence showing that he

11

pursued the proper channels and that his failure to exhaust administrative remedies was the result of mistakes made by the BOP. Mr. Jackson includes a rejection notice for Remedy No. 966137, dkt. 32-1 at 6, but this document is consistent with the defendants' evidence showing that Mr. Jackson initiated this remedy at the wrong level, *see* dkt. 25-4 at 23. Mr. Jackson's statement that he filed a grievance on March 1, 2019, and then waited forty days before filing a BP-10 on March 18, 2019, dkt. 32 at 2, is plainly incorrect, since only seventeen days had passed between those two dates. Further, Mr. Jackson's reply was filed as a letter to the clerk of court, but it was not sworn to and does not on its own serve as evidence in support of his arguments. The evidence shows only that each of Mr. Jackson's Halal diet-related complaints were rejected.

Further, even assuming that there was some confusion about the process, Mr. Jackson has failed to show that it was so opaque that it was incapable of use or that the defendants thwarted his effort to grieve the Halal diet issue "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60 (2016). Rather, Mr. Jackson was advised to get help from his unit team by showing the response to the unit team and getting the warden's response. Dkt. 25-4 at 30. Mr. Jackson declined to do so, even though it was not too late to begin the process anew because of his contention that the issues related to his diet were ongoing.

Last, Mr. Jackson contends that his failure to exhaust administrative remedies should be excused because he filed a tort claim based on some of the same facts. But tort claims are not a substitute for nor the equivalent of administrative remedies that are required pursuant to 42 U.S.C. 1997e(a). *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1206, 1214 (10th Cir. 2003), *abrogated on other grounds, Jones v. Bock*, 549 U.S. 199 (2007) (noting the difference between filing a tort claim notice for FTCA claim and filing grievances for *Bivens* claims); *also compare* 28 U.S.C. § 2675(a) with 42 U.S.C. § 1997e(a). And the record demonstrates that Mr. Jackson

understood that the notice of a tort claim and exhaustion of administrative remedies were separate requirements. Dkt. 32-1 at 7 (Mr. Jackson stating in the grievance appeal filed on December 31, 2018, that he also planned to pursue money damages by filing a tort claim).

Mr. Jackson did not fully exhaust his available administrative remedies as required by the PLRA. Accordingly, Mr. Jackson's RFRA claims must now be **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that all dismissals under 42 U.S.C. § 1997e(a) should be without prejudice).

### III. Conclusion

For the foregoing reasons, the defendants' motion to dismiss and motion for summary judgment, dkt. [25], is **granted**. Mr. Jackson's First Amendment claims against Ms. Adams are dismissed with prejudice for failure to state a claim in light of *Ziglar v. Abbasi*. Mr. Jackson's RFRA claims are dismissed without prejudice as unexhausted. Final judgment shall now issue.

**SO ORDERED.**

Date: 8/24/2021

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JEREMY RAY JACKSON
12372-028
TERRE HAUTE – FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov